[No. 35272.  *En Banc.*  February 16, 1961.]

HANS SCHWEITER *et al., Respondents,* v. WALLACE HALSEY, *et al., Appellants.*[1]

[1]Reported in 359 P. (2d) 821.

*S. Dean Arnold,* for appellants.

*Donald W. Moore,* for respondents.

DONWORTH, J.—Halsey and wife (appellants) owned a large farm in Asotin County (partly tillable land and partly pasture land) subject to a mortgage. They listed this land for sale with Mason & Teague (brokers) of Lewiston, Idaho.

These brokers showed the property to Schweiter brothers (respondents), who were desirous of purchasing the tillable land only. Appellants were agreeable to selling that portion of the land but had no legal description thereof.

Respondents needed not less than fifty thousand dollars to finance the deal. The mortgagee was willing to increase the amount of the mortgage to fifty thousand dollars at six per cent interest. Respondents were so advised by the brokers, who also suggested that a loan might be obtained from a life insurance company at a lower rate.

On October 23, 1956, the parties executed an earnest-money receipt. Although the earnest-money receipt indicated that the legal description of the property to be sold was attached, there was, in fact, no legal description attached at the time the receipt was executed. The brokers had a legal description of the entire property, and respondents instructed them to retain respondents' copy of the receipt. Several weeks later, upon completion of a survey, the legal description of the tillable land was attached thereto by the brokers, and respondents were notified of this fact.

An agent of an insurance company viewed the land and requested additional security for a fifty-thousand-dollar loan. Respondents were willing to include in the mortgage certain other property owned by them.

On December 1, 1956, respondents, together with one of the brokers, went to Spokane with a legal description of all the land to be covered by the mortgage and made a formal application for a loan. Ten days later, the brokers were notified by the insurance company that the loan had been

approved. They promptly notified respondents of this fact. Respondents asked that the closing of the transaction be delayed until after January first for tax reasons.

Meanwhile, the insurance company asked for a preliminary title report and a copy of the proposed deed from appellants to respondents. These were furnished, and later a proposed note and mortgage to be signed by respondents were furnished by the insurance company.

The parties had had discussions concerning construction of a fence between the tillable land and the pasture land. Appellants had orally agreed to construct such a fence but the work had been delayed by the weather. It was agreed through the brokers that part of the proceeds of the sale would be held by the brokers until the fence had been completed.

Appellants executed the deed and the brokers requested respondents to execute the note and mortgage. Respondent J. E. Schweiter went to the brokers' office and stated that his wife had refused to sign the papers. On January 11, 1957, respondents gave notice of rescission of the transaction and appellants promptly tendered performance, which was refused by respondents.

On April 26, 1957, respondents instituted this action for the purpose of obtaining a declaration of the rights and duties of the parties under the earnest-money agreement. Shortly thereafter, appellants sold the tillable land to a third party for seven thousand dollars less than respondents had agreed to pay for it.

Appellants filed an answer containing a cross-complaint in which they sought to recover the seven-thousand-dollar loss on the sale, plus other special damages.

The trial court rendered a memorandum decision holding that the earnest-money agreement was void because it contained no legal description of the real estate involved in the transaction.

Appellants challenge the following italicized portion of finding of fact No. 3:

" 'That said earnest money receipt, executed by plaintiffs on October 23, 1956, and prepared by Clark Mason, agent

for defendants, *does not contain a description of lands involved in this transaction,* and at the time of its execution there was not attached to said earnest money agreement any legal description sufficiently definite to locate said real property without recourse to oral testimony.' (emphasis ours)"

Appellants also assign error to the entry of conclusions of law Nos. 1 and 2, reading as follows:

"I. That the earnest money executed by plaintiffs on October 23, 1956, designated as Exhibit A and attached to plaintiffs' complaint and introduced as Plaintiffs' Exhibit No. 1, is void as being in violation of the Statute of Frauds;

"II. That plaintiffs shall have judgment against defendants in the sum of $5,000.00 plus interest at the statutory rates from date of demand, January 11, 1957;"

Finally, appellants allege that the trial court erred in dismissing their cross-complaint with prejudice.

We shall dispose of the assignments in the order in which they are raised.

Finding of fact No. 3 is wholly supported by the evidence. It is undisputed that, *at the time the earnest-money agreement was executed* by the parties hereto, it neither contained nor had attached to it an adequate legal description of the lands involved in this transaction. The legal effect of attaching the description at a subsequent date will be discussed later in this opinion.

■ Conclusion of law No. 1 is in accord with the law of this state. We have consistently held that an earnest-money agreement containing an inadequate legal description of the property to be conveyed is void as being in violation of the statute of frauds. *Martin v. Seigel,* 35 Wn. (2d) 223, 212 P. (2d) 107, 23 A. L. R. (2d) 1 (1949); *Leo v. Casselman,* 29 Wn. (2d) 47, 185 P. (2d) 107 (1947); *Fosburgh v. Sando,* 24 Wn. (2d) 586, 166 P. (2d) 850 (1946); *Martinson v. Cruikshank,* 3 Wn. (2d) 565, 101 P. (2d) 604 (1940).

■ Conclusion of law No. 2 does not follow from conclusion of law No. 1 and is, therefore, erroneous. Although the earnest-money agreement was unenforcible and could not be made the subject of reformation, this does not entitle respondents to a return of their earnest money. At no

time did appellants repudiate the contract. On the contrary, they tendered performance and did not otherwise dispose of the property until after respondents commenced this action. Under these facts, the case falls directly within the rule of *Dubke v. Kassa,* 29 Wn. (2d) 486, 187 P. (2d) 611 (1947), wherein we said:

"The applicable rule is that a vendee under an agreement for the sale and purchase of property which does not satisfy the statute of frauds, cannot recover payments made upon the purchase price if the vendor has not repudiated the contract but is ready, willing, and able to perform in accordance therewith, even though the contract is not enforcible against the vendee either at law or in equity. 49 Am. Jur. 870, § 564; 37 C. J. S. 779, § 256; 2 Restatement of the Law of Contracts 614, § 355; *Johnson v. Puget Mill Co.,* 28 Wash. 515, 68 Pac. 867 (dicta)."

Further in the opinion we also said:

"It does not seem to be, nor can it be, seriously urged that appellants sacrificed their right to retain the payment received, because they sold the property to a third person after the respondent had commenced this action."

Unfortunately, neither party called the trial court's attention to the *Dubke* case, *supra.*

*Browne v. Anderson,* 36 Wn. (2d) 321, 217 P. (2d) 787 (1950), involved a refusal by the prospective lessee to execute a lease after he had paid the prospective lessor five hundred dollars earnest money pursuant to a certain written memorandum signed by the lessor's authorized agent on her behalf. The action was brought by the prospective lessee to recover this earnest money. The trial court denied recovery and this court affirmed, quoting with approval from *Johnson v. Puget Mill Co.,* 28 Wash. 515, 68 Pac. 867 (1902), the following:

" 'In *Ketchum v. Evertson,* 13 Johns. 358-364 (7 Am. Dec. 384), it is said:

" ' "It may be asserted, with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipu-

lations, according to the contract, has never been suffered to recover for what has been thus advanced, or done. The plaintiffs are seeking to recover the money advanced on a contract every part of which the defendant has performed, as far as he could by his own acts, when they have voluntarily and causelessly refused to proceed, and thus have, themselves, rescinded the contract.

" ' "It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have." ' "

In the *Browne* case, we also cited the *Dubke* case, *supra,* and reaffirmed its rationale.

Thus it appears that this court, in accord with the great weight of authority (169 A. L. R. 187), has consistently denied recovery of earnest money paid under a void or unenforcible agreement to convey real estate where the buyer has defaulted and the seller was at all times ready, able and willing to consummate the transaction.

Conclusion of law No. 3, to the effect that appellants' cross-complaint should be dismissed with prejudice, was not erroneous.

■ Appellants cite *Hedges v. Hurd,* 47 Wn. (2d) 683, 289 P. (2d) 706 (1955), in support of the proposition that even though an earnest-money agreement may be insufficient to meet the legal test for specific performance, it can still form the basis for an action for damages for breach thereof.

The rule contended for by appellants applies to those situations where the contract involved is too *indefinite* in its terms to be specifically enforced, but yet is certain enough to constitute a valid contract for breach of which damages may be recovered. The rule has no application where the contract fails to satisfy the statute of frauds.

In the *Hedges* case, *supra,* we said:

"The earnest-money receipt and agreement in the instant case adequately describes the subject matter of the sale as certain real estate and a few items of personal property.

There is no problem as to the competency of the parties, the adequacy of the consideration, misrepresentation or fraud, *or whether there is a memorandum or writing sufficient to satisfy the statute of frauds.* . . . [Italics ours.] "We now come to this question: What elements are essential to a simple, valid and binding contract for the sale of land *in an action for damages for breach thereof?* As indicated above, the earnest-money receipt herein involved contained an adequate description of the property. It specified the total purchase price, the method of payment of principal and interest; provision was made for prorating taxes, insurance, and liens; for payment of water and other utilities, for possession, and for the deposit in escrow of the balance of the down payment by the purchasers, and a warranty deed by the seller. In view of what was said as to the earnest-money receipt in the *Hubbell* case, *supra,* we are convinced that the aforementioned things constitute and embrace all of the essential elements of a simple, binding contract for the sale of land, and that the earnest-money receipt or contract in the instant case was breached by the appellant in the instant case."

See, also, *Goodwin v. Gillingham,* 10 Wn. (2d) 656, 117 P. (2d) 959 (1941); *Richardson v. Taylor Land & Livestock Co.,* 25 Wn. (2d) 518, 171 P. (2d) 703 (1946).

██ Appellants take the position that in the present case the attachment of the legal description of the lands to the earnest-money agreement by the brokers several weeks subsequent to the time the parties executed the agreement, was sufficient to satisfy the statute of frauds in this case. Appellants cite *Edwards v. Meader,* 34 Wn. (2d) 921, 210 P. (2d) 1019 (1949), in support of their position.

In the *Edwards* case, *supra,* the earnest-money agreement contained a provision reading: " 'Legal Des. to be entered by agent.' " In accordance with this authorization, the legal description was inserted in the earnest-money agreement by the real-estate agent a day or two after the instrument had been executed by the parties. In view of the provision in the earnest-money agreement, quoted above, we held:

" . . . the agent was authorized by the instrument itself to insert the description therein and that he did so in compliance with this authority. This having been done in the manner stated in the findings, the earnest money agree-

ment was complete and constituted a valid instrument under the statute of frauds."

During the course of that opinion, we expressly distinguished the case of *Leo v. Casselman, supra,* by stating:

"The cited case [Casselman] is readily distinguishable from the case at bar because in the *Casselman* case *the instrument itself contained no authorization to any person to place the description on the back thereof,* while here, the earnest money receipt expressly provided that the description was to be entered by the agent. . . ." (Italics ours.)

Likewise, the case at bar is distinguishable in the same manner as the *Casselman* case, *supra.* Here, the instrument itself contained no authorization to any person to attach a legal description thereto. Nor can we imply such authority from the fact of the real-estate brokers' possession of the earnest-money agreement signed by both parties. *Barth v. Barth,* 19 Wn. (2d) 543, 143 P. (2d) 542 (1943).

Since the contract is in violation of the statute of frauds, it is void and cannot form the basis of an action at law to recover damages for the breach thereof, as such an action presupposes a valid contract.

The judgment of the trial court, in so far as it awards the return of the five thousand dollars earnest money to respondents, is reversed with directions to dismiss the action. In all other respects, the judgment is affirmed.

MALLERY, WEAVER, ROSELLINI, OTT, and FOSTER, JJ., concur.

HILL, J. (concurring in part and dissenting in part)—I concur in so much of the majority opinion as directs the dismissal of the purchasers' action for its earnest-money payment of five thousand dollars; I dissent from so much thereof as results in a dismissal of the sellers' action for damages.

The description in the earnest-money receipt was: "Approx 885 acres of farm land off the Wallace Halsey ranch subject to a survey to be furnished by the seller."

The earnest-money receipt did not contain a detailed description of the property because both parties knew that

the segregation of the farm land, which the respondents desired to purchase, from the grazing and nontillable lands required a survey for an accurate description. The agreement specifically stated that such a survey was to be furnished by the sellers. The survey was made, and the description of the farm land was furnished to both parties and accepted by them; in fact, the purchasers used the description, furnished by the survey, in making their arrangements for financing.

After negotiations with third parties (relative to financing) were completed, the purchasers asked that the closing be delayed until after January 1st for tax purposes. After January 1st the purchasers repudiated the contract, and now rely on the technical defense that the agreement signed by the parties contained no description of the property to be sold and constituted a violation of the statute of frauds.

Ordinarily, under that statute, a description or designation is sufficient if, by the resort to any fact extrinsic to the writing but referred to therein, the land can be identified with certainty. As suggested in *Wilkins v. Hardaway* (1911), 173 Ala. 57, 55 So. 817, that which was uncertain was rendered certain pursuant to the terms of the agreement.

We, too, have recognized, in *Edwards v. Meader* (1949), 34 Wn. (2d) 921, 210 P. (2d) 1019, that the description need not be in the agreement at the time it is executed but can be furnished at a later time if the agreement so provides.

We have here a definite agreement that the description was dependent on a survey. The survey was made, and the sellers and purchasers both had copies of the description, which resulted from the survey, and its sufficiency and accuracy is unquestioned. The purchasers, as we have noted, used the description in negotiating their financing.

The majority would limit *Edwards v. Meader, supra,* to a fact situation where someone is specifically authorized to attach the description to the earnest-money receipt at a later time. I would extend it to situations where the agreement recognizes that a legal description is not presently

available and provides how it is to be furnished and it is so furnished and accepted by both parties.

The right to maintain an action for damages would avail the sellers nothing more than they already have, if they are limited to liquidated damages in the amount of the five thousand dollars earnest money as the respondents contend. This issue was not, however, presented to the trial court. It is my view that the amount of the damages, caused by the sellers' breach of their agreement, should be resubmitted to the trial court.

HUNTER, J., concurs with HILL, J.

FINLEY, C. J. (dissenting)—Assuming, *arguendo*, that the earnest-money agreement in the instant case is defective (inadequate legal description of the land), I nevertheless cannot agree with the conclusion of the majority. We must still determine whether a vendee, under a contract for the sale of land, which does not meet the requirements of the statute of frauds, may repudiate the agreement and recover his down payment from a vendor who is ready, willing and able to perform the contract and convey the land.

The majority opinion, relying on *Dubke v. Kassa* (1947), 29 Wn. (2d) 486, 187 P. (2d) 611, answers this question in the negative. This holding is based upon an assumption that a contract of this type is merely unenforcible, not void. The weight of authority clearly supports this conclusion. But it seems to me that the force of numbers and the persistent habit of closely following precedent should not immunize the rule of *Dubke* from the possibility of re-evaluation and revision.

Frankly, I question the validity of the *Dubke ratio decidendi* and the assumption underlying the majority opinion. If the purported contract in the instant case is absolutely void—rather than being voidable or simply creative of a right as to which no remedy is available for enforcement—then there is simply and absolutely no consideration to support the payment made by the vendee, and he ought to recover it. *Reedy v. Ebsen* (1932), 60 S. D. 1, 242 N. W. 592. Actually, it seems to me incongruous and

a bit on the ridiculous side to say the writing is void or even unenforcible (which is the equivalent of saying that it created no legal relations between the parties), and then to say that for some unarticulated, vague or mysterious reason, the legal or other relationships of the parties were altered sufficiently to be judicially cognizable and to give the vendor a legal right to keep the vendees' down payment.

Our statute of frauds, RCW 64.04.010, provides:

"Every conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate, shall be by deed:  . . ."

By way of comparison, note:

(1) RCW 19.36.010: "In the following cases, specified in this section, any agreement, contract and promise *shall be void,* unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say:  . . . [Specified situations omitted.]"  (Italics mine.)

(2) English Statute of Frauds (29 Car. ch. 3, § 4 (405) (1677)): " . . .  no action shall be brought  . . .  upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them  . . ." unless in writing.

RCW 19.36.010 is clearly illustrative of the type of statute under which an attempt to contract, failing to meet the statutory requisites, is absolutely void. The English statute, on the other hand, lends itself readily to the construction that an oral contract for the sale of land is valid, but there is simply no remedy available for its enforcement. RCW 64.04.010, governing contracts for the sale of land in Washington (see 34 Wash. L. Rev. 124, 134-135) does not fall neatly into either category. As is noted in the majority opinion, we have from time to time spoken of contracts not meeting the requirements of this statute, rather loosely, as being both void and unenforcible. In most cases it makes little difference. In the instant case, however, it makes a great deal of difference. The words *void* and *unenforcible* are terms of art and are mutually exclusive. Before this case can be decided, we must determine which of these

terms is made appropriate by RCW 64.04.010. As a matter of legal logic, it cannot be both.

In *Reedy v. Ebsen, supra,* the South Dakota court set forth the following quotation from *Brandies v. Neustadtl* (1860), 13 Wis. 158, explaining the difference as follows:

" ' . . . The parol contract, being void, furnishes no consideration for the payment. A consideration, to be sufficient, must be either a benefit to one party or a damage to the other. The purchaser can derive no benefit from the supposed contract. Nothing passes to him by virtue of it; he obtains no interest in the land, and no promise or agreement on the part of the seller to convey him any; and he can never derive any advantage from what has transpired, except it be as a matter of favor on the seller's part. . . . The reason given for not allowing the purchaser under the English statute, and those like it, to repudiate the agreement and recover back what he has paid, so long as the seller is in no default, is very obvious. But it cannot be given here. It is that the agreement is not void but voidable, or, to speak more correctly, not actionable. . . . The repeal of the statute in such case would at once enable the purchaser to maintain his action upon the agreement. With us it is otherwise. Its repeal would leave him in no better situation than formerly. There is in that case a valid living contract between the parties, and though the remedy be suspended, it binds the conscience, and, until it has been broken, constitutes a sufficient consideration for the payment of the money. There being thus a good consideration, if the purchaser chooses to rely upon the honor of the seller for the performance of his contract, instead of putting it in such form that the courts can enforce it, it is no injustice to say to him that he shall not ignore it, at least until that honor has been violated. . . . Under our statute there is no contract; nothing which can be the foundation of any legal or equitable obligation; and how can the court create one? . . . *It finds one party in the unexplained possession of the money of another, which he knowingly received without any legal equivalent, and not as a gift, and which he has no legal or equitable right to retain; and why should he not refund?* . . . ' " (Italics mine.)

Assuming, *arguendo,* that a contract of the type with which we are here concerned does not meet the statutory requirements as to form or formality, I believe that because

of the absence of a clear manifestation of legislative intent a good deal more consideration should be given to the problem by this court than appears to have been given in the *Dubke* case, upon which the majority rely. In fact, assuming again that the legal description is defective, it seems to me that the language of RCW 64.04.010 most strongly supports a conclusion that the earnest-money agreement in the instant case is not merely unenforcible, but is void. Thus, I cannot agree with the reasoning of the majority.

However, except for the purpose of argument, I am unwilling to make the assumption that the legal description is fatally defective and is either void or voidable. On this point I agree with the reasoning of Judge Hill's opinion and the disposition of this appeal as suggested therein.

