[No. 424-3.    Division Three.    July 5, 1972.]

LeROY FLETCHER, *Respondent*, v. ROBERT L. GIER *et al.*, *Appellants.*

*John A. Westland* (of *Loney, Westland & Raekes*), for appellants.

*Daniel J. Hurson,* for respondent.

GREEN, J.—Defendants, Robert L. Gier and wife, appeal from a judgment awarding plaintiff, LeRoy Fletcher, rental under a written lease that was technically defective because it was not acknowledged and did not contain a proper legal description.

Plaintiff was an employee of Welch Foods, Inc., a division of National Grape Cooperative Association, at Kennewick, Washington. In addition to this employment, plaintiff operated certain vineyards near Kennewick. In 1967 he was transferred to the east coast and as a consequence advertised in the local newspaper for a tenant to operate his vineyards. The defendants, having seen the advertisement, contacted the plaintiff and after negotiation defendants prepared the following agreement:

I, Robert L. Gier, agree to lease from Mr. L. Fletcher, 23 plus acres of concord grapes and four plus acres of pasture. A Welch contract goes with said grapes to Mr. Gier for the duration of the lease. Mr. Fletcher agrees to leave with leased ground a tractor and miscellaneous equipment for Gier's use, with Mr. Gier maintaining equipment in the same manner as his own. Mr. Gier is to keep Mr. Fletcher's vineyards at all times in the same condition he does his own vineyards under Welch contract.

This lease is to go into effect January 1st, 1968, and run until January 1st, 1971 (three years). Upon notice from Mr. Fletcher, Mr. Gier will give up his lease for reasons of sale of property after harvest, or be reimbursed for crop. Payment of leased property will be 1st of December each year, and will be as follows:

1. Anything over 188 tons, both parties split 50-50 after harvest expense, and providing the price per ton remains near last three year average, plus Mr. Gier pays Mr. Fletcher Four Thousand Seven Hundred Fifty ($4,750.00) Dollars.

2. From 100 ton to 188 ton, Mr. Gier pays Four Thousand Seven Hundred Fifty ($4,750.00) Dollars.

3. From a part crop to 100 ton, the expense of farming is paid first and all of the balance goes to Mr. Fletcher, up to Four Thousand Seven Hundred Fifty ($4,750.00) Dollars.

4. Should a complete failure happen, Mr. Gier is out all his expense of farming, but not liable for any payment to Mr. Fletcher.

5. Mr. Fletcher is to pay water and taxes at all times.

DATED THIS 26 DAY OF Dec. 1967.

| | |
|---|---|
| LEASEE | Robert L. Gier |
| LEASOR | L. W. Fletcher |

Pursuant to this agreement, defendants took possession of the vineyards.

In 1968, defendants paid rental to the plaintiff in the sum of $4,750 as provided in the agreement and made a net profit in excess of $4,000 over and above the rental. They farmed the vineyards through the crop year 1969 but refused to pay plaintiff the rental provided for in the agreement. Defendants were still farming the property in March 1970 when the lease was terminated upon plaintiff's sale of most of the property.

First, defendants contend the trial court erred in finding that the agreement was valid and enforceable as to the year 1969 by reason of the defendants' performance of the agreement. It is contended that, because the agreement was unacknowledged and did not contain a proper legal description, plaintiff's action was barred by the statute of frauds.[1]

We believe, as did the trial court, that this case is governed by *Garbrick v. Franz*, 13 Wn.2d 427, 125 P.2d 295 (1942). That case involved a written lease unacknowledged and without adequate legal description. The tenants, in reliance upon the written agreement and with the knowledge of the lessors, made substantial improvements to the premises looking toward occupancy for the full term. The lessors sold the property. The purchaser, who had full knowledge of the contents of the lease and the improvements made by the tenants, gave notice of termination of the tenancy and

---

[1]In support of this contention, defendants rely upon RCW 64.04.010-.050; *Central Bldg. Co. v. Keystone Shares Corp.*, 185 Wash. 645, 56 P.2d 697 (1936); *Martinson v. Cruikshank*, 3 Wn.2d 565, 101 P.2d 604 (1940); *Bonded Adjustment Co. v. Edmunds*, 28 Wn.2d 110, 182 P.2d 17 (1947); *Martin v. Seigel*, 35 Wn.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949); and *Schweiter v. Halsey*, 57 Wn.2d 707, 359 P.2d 821 (1961). These authorities are not apposite. *Schweiter, Martin,* and *Martinson* do not involve leases, but deal with the denial of specific enforcement of defective earnest money agreements. In *Bonded Adjustment Co.*, a lessor was denied the recovery of rental under a defective lease where the lessee, after a dispute with the lessor over cleaning and repairs of the premises, never occupied the premises. In *Central Bldg. Co.*, the court found the lease properly executed and therefore not within the statute of frauds.

demanded possession of the property. The court held there had been sufficient performance by the lessee to remove the agreement from the statute of frauds. In reaching this conclusion, the court said at page 430:

> An unacknowledged lease has no more force than an oral lease. [Citing case.] An unacknowledged lease of real estate for a period longer than one year only creates a tenancy of month to month or in some instances from period to period. [Citing cases.]
>
> It is well settled in this and many other states that a sufficient part performance by a lessee of the covenants contained in a lease removes the contract from the statute of frauds and authorizes a court of equity to decree the specific performance of the agreement by the lessor.
>
> The exception to the statute of frauds, which compels a lease of real estate for more than one year to be in writing and requires it to be acknowledged by the lessor, rests upon the principle that a court of equity will not allow the statute to be used to perpetrate a fraud. . . .
>
> . . . The decisions of this court are in harmony with the general rule that part performance by a lessee will remove the contract from the statute of frauds.

See *Franklin v. Fischer*, 34 Wn.2d 342, 208 P.2d 902 (1949); *Haggen v. Burns*, 48 Wn.2d 611, 295 P.2d 725 (1956); *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971); 1 Tiffany, Real Property § 83 (3d ed. 1939).

In the instant case, instead of part performance we have full performance by the lessee during the year 1969. As a consequence, enforcement of the written agreement is not barred by the statute of frauds.

■ Second, defendants assign error to certain findings of fact in which the court refused to find the agreement to have been modified by the parties for the crop year 1969; found that 106 tons of grapes were produced from the leased property; found a rental of $4,750 to be due under the agreement; and found the agreement to have been mutually terminated because of the sale of the property. The evidence underlying these findings of fact was in dispute during the trial. There is substantial evidence to support these findings and they will not be disturbed. *Thorndike v.*

*Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). The conclusions of law, to which error is also assigned, are supported by the findings.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.