[No. 38787.    Department Two.    February 20, 1967.]

ARNE G. GOEDECKE *et al., Respondents and Cross-appellants,* v. VIKING INVESTMENT CORPORATION, *Appellant.**

*Hulbert S. Murray,* for appellant.

*Schweppe, Reiter, Doolittle & Krug, Robert R. Beezer,* and *Thomas R. Beierle,* for respondents and cross-appellants.

OTT, J.—March 23, 1962, Arne G. Goedecke entered into a contract to purchase from Parker & Sanwick Investments,

*Reported in 424 P.2d 307.

Inc., now Viking Investment Corporation, certain real estate adjacent to the city of Renton for the sum of $349,514, to be paid in installments. The earnest money agreement dated February 23, 1962, provided *inter alia* "that public sewers are available to property".

October 19, 1964, the final payment on the purchase price of the contract in the sum of $100,272.95 was in default and upon that date the seller served notice of intention to declare a forfeiture and to cancel the contract if the payment was not made by the 10th day of November, 1964.

November 9, 1964, Arne G. Goedecke and his wife commenced this action against the Viking Investment Corporation and the Retirement Income Corporation, in which action the plaintiffs sought specific performance of the real-estate contract and deposited into court the sum of $100,272.95, which they alleged to be the amount due and owing on the contract. Plaintiffs alleged that the Retirement Income Corporation claimed an interest in the real estate which interest, if any, was acquired subsequent to the contract and that the rights of the Retirement Income Corporation were junior to the claims of the plaintiffs. They further alleged that the Viking Investment Corporation had breached its contract which provided "that public sewers are available to property" and that by virtue of the breach the plaintiffs had been damaged in excess of $60,000, and prayed that the court adjudicate the sums due and owing between the parties, that the defendant Viking Investment Corporation be required to furnish a good and sufficient warranty deed to the real estate, and that the funds deposited into court be distributed to those entitled thereto.

The Viking Investment Corporation answered the complaint, denied that it had breached the contract, and prayed that the contract be forfeited because of the failure of the plaintiffs to make payments in accordance with the terms of the contract.

The case was tried to the court which entered findings of fact, conclusions of law, and judgment. The court denied

forfeiture of the contract and ordered its specific performance; and required Viking Investment Corporation to make, execute and deliver a good and sufficient warranty deed to the property. The court further awarded the plaintiffs an offset in the sum of $36,000 as damages "because public sewers were not available to property which plaintiffs purchased from the defendant Viking Investment Corporation."

On appeal, appellant Viking Investment Corporation contends that the court erred (1) in not declaring a forfeiture; (2) in directing specific performance of the contract; and (3) in awarding the respondents damages in the sum of $36,000 predicated upon the alleged breach of the contract. We have considered each of the assignments of error as they relate to (1) and (2) and find no merit in either of these assignments of error.

With reference to (3), the pertinent portions of the court's findings of fact and conclusions of law are as follows:

A road running generally from the property being purchased by Goedecke to the sewer facilities at Seventh and Jones Streets in Renton runs through the Puget Sound property in Section 21, Township 23, North, Range 5 E.W.M. In 1880, pursuant to the laws as then in force, the Commissioners of King County authorized the establishment of King County Road No. 63 which is also known as McCallister Road. If the plaintiff was to establish sewer facilities from the property he was purchasing to Seventh and Jones, this road was the right-of-way through which such a sanitary sewer line would be constructed. At the time the real estate contract was executed, the parties contemplated that this right-of-way would be available for such use. Finding of Fact No. 5.

After considering the testimony of the parties, the City Engineer of the City of Renton, the Assistant King County Engineer and Greathouse, in addition to several exhibits relating to the establishment and location of McCallister Road, *the court concludes that no such County Road can be ascertained on the site from any description of record.* These facts being so, as a practical matter, public sewers were not available to the property

being purchased by Goedecke. (Italics ours.) Finding of Fact No. 6.

The plaintiffs are entitled to judgment against the defendant Viking Investment Corporation in the sum of $36,000.00 because public sewers were not available to property which plaintiffs purchased from the defendant Viking Investment Corporation. Conclusion of Law No. 2.

Whether public sewers were available to the property by the use of McCallister Road stands or falls on whether McCallister Road was available to respondents as a public access to 7th and Jones Streets in Renton.

The record establishes the following facts. August 17, 1880, the Board of County Commissioners of King County approved the survey establishing McCallister Road and ordered that it be opened as a public road:

[I]t is Ordered by the board that said report, plat and survey be and they are hereby approved and accepted by the board, and the Auditor is hereby directed to record the same in the road book of the County, and from henceforth said road shall be considered a public highway; and it is further ordered by the board that the Supervisor of roads for road district No. 21, be and he is hereby directed to open said road according to law;
. . . .

In addition to the order of the county commissioners opening the road, the record shows (1) a copy of the actual survey of the road, (2) that the deeds to the actual right of way acquired are recorded in King County, and (3) that the road appears in title reports. In this regard, Mr. Wilson, the city engineer of the city of Renton, testified as follows:

Q. I will ask you on Section 21 as to whether you have any knowledge of any conveyance under which any public authority have title to that road? A. I have not made a complete study on it because I had no particular need to but I am aware that there is a right-of-way there, as per title reports, and I have seen the deed. Q. You have seen the deed? A. Yes. Q. Who has that deed? A. King County.

Exhibit 14 is a map copyrighted by Kroll Map Company, Inc., dated January 1, 1958, which shows McCallister Road as it crosses the property of Puget Sound Power and Light

Company, and connects with the intersection of 7th and Jones Streets in Renton. Exhibit 32, a certified map of King County, shows McCallister Road to be 60 feet in width, its location being placed on the map from an aerial photograph taken in 1937. The respondent Mr. Goedecke recognized that McCallister Road did in fact exist. He petitioned that McCallister Road be vacated by the city of Renton and the petition was denied. In this regard the city engineer of Renton testified:

Q. Now, on what do you base your knowledge that it's a public road? A. It appears on title reports and there was an attempt by Mr. Goedecke to have it vacated and at that time it came to my knowledge that there was a right-of-way there.

That a road known as McCallister Road crosses the Puget Sound Power and Light Company property was testified to by Mr. Greathouse, an associate engineer of Puget Western (a subsidiary of Puget Sound Power and Light Company) who stated as follows:

Q. Have you observed any trails that are alleged to have been McCallister Road? A. Yes. Q. About how wide are they? A. In terms of a car width the brush touches both sides in many instances. . . . Q. And when you joined the organization in February of 1963 that road was there, was it not? A. There was a drivable path, I would say, at some abuse of equipment. Q. Do you know how long it has been there, Mr. Greathouse? A. I have heard stories about it being there since the early memory— . . . . Q. You have heard stories it has been there how long, Mr. Greathouse? A. Since the earlier memory of the people that mentioned the road. Q. Since 1880, wasn't it? A. I do not know that. Q. It has been there an awful long time according to your stories as told to you? Right? A. That is what I have heard.

The traveled road which Mr. Greathouse designated and acknowledged to be McCallister Road was the "right-of-way" which the trial court, in finding of fact No. 5, found to be the means of access to the 7th and Jones Streets sewer facility. There is no evidence in the record that the existing McCallister Road is not within the area which King County had acquired by deed. There is some

evidence that the width of McCallister Road as it is actually used does not encompass the entire 60-foot right of way but is only a car width in some places. An abutting property owner does not acquire by adverse possession any part of a right of way to which a municipal corporation has title. *Commercial Waterway Dist. No. 1 of King Cy. v. Permanente Cement Co.,* 61 Wn.2d 509, 379 P.2d 178 (1963).

As opposed to this evidence of the existence of McCallister Road, the respondent's witness, Mr. Gonnason, assistant county engineer for King County, testified that the King County engineer's file on McCallister Road did not contain a copy of the order establishing the road nor did the file indicate that the county had expended any sums to maintain the road. On cross-examination, Mr. Gonnason was asked, "You are not testifying that no funds were ever spent on that road, that the road wasn't opened, or that maintenance by the County was made on that road?" His answer, "That is correct." That the road was actually opened is shown by the order quoted above, taken from the records of the Board of County Commissioners.

A public road does not lose its character as a public road because no public funds are expended for its maintenance and upkeep. *Vetter v. K. & K. Timber Co.,* 124 Wash. 151, 213 Pac. 927 (1923); *Brokaw v. Town of Stanwood,* 79 Wash. 322, 140 Pac. 358 (1914).

The court in finding of fact No. 5, quoted above, found McCallister Road does connect with the sewer facilities at 7th and Jones Streets.

■ The court then concluded "that no such County Road [McCallister Road] can be ascertained on the site from any description of record. These facts being so, as a practical matter, public sewers were not available to the property being purchased by Goedecke." This conclusion of the trial court under the facts of this case is predicated upon a fundamentally wrong basis. In this proceeding, the court was concerned only with whether or not, within the area in question, there was a county road known as McCal-

lister Road over which public sewers were available from the property to 7th and Jones Streets in Renton. It was not incumbent upon the appellants to furnish the court with a metes and bounds description of the existing McCallister Road. The burden upon the appellants of showing availability of sewers was met when McCallister Road, as it presently exists, was shown to be a public thoroughfare.

At the time the earnest money agreement was entered into, the area in question was not a part of the city of Renton. In order that sewers be made available through the use of the city of Renton facilities, the city required annexation. At the request of Mr. Goedecke, the appellants petitioned for annexation. In this regard, Mr. Sanwick of the Viking Investment Corporation, testified as follows:

Q. And Mr. Goedecke requested you to annex to the City of Renton? A. Yes. Q. And did you? A. Some time in March we petitioned to the City of Renton at Mr. Goedecke's agreement and request. Q. This is March of '62? A. '62. Q. All right. This is prior to the time the contract was signed? A. But after the earnest money was written. Q. Mr. Sanwick, did you then negotiate with the City of Renton for installation of sewers for this development? A. We didn't have an awful lot to do with it, with the negotiations. Those were—the actual negotiations were done by Mr. Goedecke. Mostly with our knowledge and consent. I attended some of the meetings. Q. Did you receive a letter from the City of Renton concerning sewers? A. Yes.

March 23, 1962, after being assured by the city of Renton that a sewer connection would be available at 7th and Jones Streets upon annexation of the property to the city, Mr. Goedecke signed the contract of purchase.

March 30, 1962, pursuant to the prior arrangement that Mr. Goedecke could have access to the Renton facilities, the Superintendent of Utilities, City of Renton, wrote the following letter, quoted in part:

This letter is to inform you that the City of Renton will have available a Sanitary Sewer connnection to serve the below described area; providing the area is annexed to the City of Renton.

With reference to this letter, Mr. Goedecke testified as follows:

Q. What generally was your understanding of the contents of that letter? A. It plainly states that the City of Renton will have available at the 7th and Jones location that I pointed out, right here, that they have a sewer connection available there for me.

The actual annexation was thereafter accomplished by city ordinance.

Thereafter on August 20, 1962, in conformity with the city's letter of March 30, 1962, the city entered into the following agreement with Arne Goedecke:

### AGREEMENT

THIS AGREEMENT made and entered into this 20th day of August, 1962 by and between THE CITY OF RENTON, a municipal corporation, hereinafter referred to as "City", and ARNE G. GOEDECKE, hereinafter referred to as "Owner"

WITNESSETH:

WHEREAS Owner is presently engaged in the development and improvement of a certain platted area and properties adjoining thereto, known as "Capri" [property here in question] development, and

WHEREAS Owner is providing for the installation of certain sanitary sewer lines to serve said area and such sewer lines to be connected with and hooked up to a certain trunk line to be installed by the Municipality of Metropolitan Seattle, and latter agency being unable at the present time to provide such hook up, and Owner having requested the City of Renton for permission to hook up to the City's facilities on a temporary basis,

Now THEREFORE, it is hereby agreed and covenanted as follows:

1. City hereby grants Owner permission to hook up and connect his sanitary sewer lines to the City's 8″ line and manhole located at 7th Avenue and Jones Street (or Beacon Avenue) and such hook up to continue until such time as the Municipality of Metropolitan Seattle has provided for the installation of its facilities. All such installation, hook up and connection, together with all accessories thereto, to be done at the sole cost and expense of Owner; Owner further agrees to pay unto the City the

regular sewer service charges imposed by the Ordinances of the City of Renton or as same may be changed and modified from time to time.

2. All the aforesaid work by Owner to be done upon approval of the plans and specifications therefor by the City Engineer and Superintendent of Utilities.

3. Owner further agrees and covenants to hold the City harmless from any liability of any type arising out of or in connection with said sewer installation and hook up.

4. As an alternate to the hook up location specified in paragraph 1, Owner may be allowed to hook up to the existing Maplewood line.

August 20, 1962, the hook up of the Renton sewer facility with the Municipality of Metropolitan Seattle (Metro) was contemplated. By agreement, the available Renton connection was, therefore, "on a temporary basis." Further, by the agreement, the city of Renton made available to Mr. Goedecke an alternate sewer facility "the hook up location . . . to the existing Maplewood line." Whether the respondent used either of these available facilities is not shown in the record. The record does show that Metro sewer facilities went "right thru the center" of the property and that respondent was using Metro sewer facilities before this action was commenced.

We conclude that the record establishes that McCallister Road does exist, that it has been in use as a public thoroughfare "since early memory," and that it was available for use by Mr. Goedecke as an access to the 7th and Jones Streets facilities in the city of Renton, within the contemplation of the contract.

The trial court erred in awarding an offset in the sum of $36,000 as damages for the alleged breach of the contract.

Because of our disposition of this cause, we do not reach the cross-appeal.

The judgment of the trial court is modified as it relates to the award of damages and in all other respects it is affirmed. The cause is remanded with instructions to enter

judgment in accordance with the views herein expressed. Since neither party has completely prevailed, each will bear his own costs.

FINLEY, C. J., DONWORTH and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.