**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUN 2 0 2013

for CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on June 20, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PATRICK H. KOFMEHL, an individual, | ) | |
| | ) | |
| Petitioner, | ) | No. 87395-0 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| BASELINE LAKE, LLC, a Washington limited liability company, | ) | Filed _____ JUN 2 0 2013 _____. |
| | ) | |
| Respondent. | ) | |
| | ) | |

WIGGINS, J.—Patrick H. Kofmehl contracted to buy a piece of land from Baseline Lake LLC. By the time of closing, the parties disputed the amount of land covered by the sale agreement. Kofmehl was willing to close the transaction only if the disputed portion was included in the sale. Baseline was willing to close the transaction only if the disputed portion was excluded, and so the sale failed to close. The trial court invalidated the contract for failure to comply with the statute of frauds and denied specific performance to either party.

The issue before us is whether Kofmehl is entitled to recover the down payment he paid before the dispute arose. Under this court's prior cases, a buyer in a land sale contract that is unenforceable under the statute of frauds may not recover restitution if the vendor is ready, willing, and able to perform

under the terms of the contract. *Schweiter v. Halsey,* 57 Wn.2d 707, 711, 359 P.2d 821 (1961). The trial court made no finding that either party had breached—let alone repudiated—and probably could not do so without making determinations of fact. Therefore, we affirm the Court of Appeals, which reversed the summary judgment granting restitution.

FACTS AND PROCEDURAL HISTORY

I.   The Transaction

Baseline acquired title to a property described as "Farm Unit 182, Irrigation Block 73, Columbia Basin Project, Grant County, Washington, according to the plat thereof filed November 29, 1951." Clerk's Papers (CP) at 88. Farm Unit 182, Irrigation Block 73 (FU 182, Block 73), consists of approximately 43 acres. CP at 69.

Baseline subsequently listed for sale two parcels within FU 182, Block 73 totaling 30.12 acres. CP at 99. The listed property consisted of a parcel of 17.40 acres, priced at $935,000, and a parcel of 12.72 acres, priced at $750,000, and purchasers could buy either parcel separately or both parcels for $1,650,000. *Id.* Baseline intended to retain the northwest 3.93 acres of the property to build a private school. CP at 69. Baseline's survey map, CP at 74, indicates the 17.40-acre parcel, the 12.72-acre parcel, and the 3.93-acre parcel labeled "EXCLUDED."[1]

---

[1] The survey map was circulated among the parties prior to the signing of the final purchase and sale agreement (Agreement). Kofmehl's broker highlighted the map for Kofmehl to indicate what property was subject to the Agreement.



CP at 74.

   As it turns out, the three parcels, consisting of 3.93 acres, 12.72 acres, and 17.40 acres, add up to a total of 34.05 acres, leaving an additional 9.04 acres of FU 182, Block 73. As the later-filed short plat discloses, this 9.04 acres is the unmarked bottom section of the survey map reproduced above. CP at 98. There appears to be no dispute that the sale did not include this 9.04 acres.

On March 9, 2007, Kofmehl offered to purchase "[a]pproximatly [sic] 30.12 acres of vacant land situated between 10th Avenue and 13th and legally described as follows: all inside and a part of FU 182, Block 73, Columbia Basin Project, Grant County Tax Parcel number 20-0838-000." CP at 84. Kofmehl offered a purchase price of $1,500,000, including $5,000 earnest money, and the offer was contingent on the following conditions:

1. Review & approval of the property and it's [sic] lot lines by the purchaser within two weeks of acceptance of this offer by the seller.

2. Final annexation into the City of Quincy by the City of Quincy.

3. Seller agrees to pay to purchaser "late comer fees" of $29,475.00 to the purchase if seller chooses to develop the 3.93 acres he has excluded from the overall parcel number shown above.

5. [sic] If seller decides not to develop the 3.93 acres he will give this purchaser a 45-day (after seller decides not to develop the 3.93 acres) right of first refusal on that land at a price equal to what the purchaser is paying per square foot for the 30.12 acres included in this offer.

*Id.* This offer was not accepted. A month later, Kofmehl and Baseline entered into a real estate purchase and sale agreement (hereinafter Agreement) for the purchase of approximately 30.12 acres of vacant land inside of FU 182, Block 73. The legal description of the property was incomplete because it did not include a metes and bounds description, nor had the property been short platted. The Agreement authorized the selling or listing broker to attach a correct legal description.

Kofmehl agreed to pay a purchase price of $1,650,000, including $50,000 earnest money. The Agreement was contingent on, among other things,

4

preliminary plat approval from the city of Quincy and "Accessibility of city sewer." CP at 75. The final signature was obtained on April 17, 2007. The closing date was set for April 15, 2008, which was eventually extended to July 1, 2008.

On May 8, 2007, Baseline's listing agent faxed Kofmehl's broker a preliminary plat clearly delineating "Lot 1" as 30.13 acres, comprising the same area that the survey map (pictured *supra* at 3, CP at 74) had marked for sale. CP at 90-91. "Lot 2" comprised the northwest 3.93 acres that had been marked "EXCLUDED." *Id.* "Lot 3" comprised the remaining 9.04 acres of FU 182, Block 73. *Id.* Kofmehl raised no objection, and on June 30, 2008, the plat was finalized with the Grant County auditor as depicted here:



CP at 98.

On July 1, 2008, Baseline submitted closing documents for the purchase of "Lot 1, Baseline Short Plat, according to the Short Plat thereof recorded in Volume 21 of Short Plats, pages 55 and 56, records of Grant County, WA." CP at 772. At this time, the sewer line did not come up to the edge of the property. However, the city of Quincy had confirmed the "availability of sewer" and promised to "assist a developer in planning of sewer service to this Property." CP at 334. The city also later confirmed the existence of easements "to provide for sewer to the subject property." CP at 335.

Kofmehl refused to sign the closing documents. Rather, he complained that the land conveyed did not include the 3.93 acres marked "EXCLUDED" on the survey map (pictured *supra* at 3, CP at 74) and ultimately platted as Lot 2 (pictured *supra* at 5, CP at 98). Kofmehl also asserted that Baseline had failed to ensure "accessibility of sewer"—a provision that he apparently understood to mean that Baseline would construct a sewer line to the property. CP at 620 ("Furthermore, I testified that pure accessibility would be '*if the sewer lines were laid across both of those properties and stubbed into this property. . . .*'" (quoting Ex. A, Parts II. 3-6, at 40)).

II.    Trial Court Proceedings

Kofmehl sued Baseline in Grant County Superior Court, asking alternatively for specific performance of the Agreement, damages for breach, and rescission of the Agreement. Baseline counterclaimed for specific performance or damages.

6

The parties brought cross motions for summary judgment. On May 1, 2009, the trial court dismissed Baseline's counterclaim for specific performance because the Agreement failed to satisfy the statute of frauds. CP at 304. In a second summary judgment, the trial court dismissed Baseline's amended counterclaim for promissory estoppel or part performance. CP at 742-46, 865-69. The court reserved for later decision Kofmehl's claims for rescission and restitution.

In a third summary judgment motion, Baseline argued that under Washington law, a buyer cannot obtain restitution of an earnest-money payment where the vendor has not repudiated the sale agreement but is ready, willing, and able to perform as agreed. *Schweiter,* 57 Wn.2d at 711. However, the trial judge reasoned that the parties could not have performed "as agreed" because the parties failed to reach a meeting of the minds. The trial judge reasoned that because neither party was clearly in breach, but both parties were responsible for the failure of the contract, equity demanded that the parties be returned to their pre-Agreement state—Kofmehl should recover his money, and Baseline should recover its land. The trial court awarded Kofmehl $87,842.78 in restitution (including earnest money, engineering fees, and title fees), as well as attorney fees and costs. CP at 850-52.

III. Court of Appeals Proceedings

Baseline appealed all decisions of the trial court to Division Three of the Court of Appeals. The Court of Appeals took review and subsequently issued a

partially published opinion, *Kofmehl v. Baseline Lake, LLC,* 167 Wn. App. 677, 275 P.3d 328 (2012).

The Court of Appeals affirmed the trial court's holding that the Agreement fell afoul of the statute of frauds, as the parties had not contested that issue. *Id.* at 690. Turning to the award of restitution, the Court of Appeals drew on the well-established Washington principle that

> "a vendee under an agreement for the sale and purchase of property which does not satisfy the statute of frauds, cannot recover payments made upon the purchase price if the vendor has not repudiated the contract but is ready, willing, and able to perform in accordance therewith, even though the contract is not enforceable against the vendee either at law or in equity."

*Schweiter,* 57 Wn.2d at 711 (quoting *Dubke v. Kassa,* 29 Wn.2d 486, 487, 187 P.2d 611 (1947)).

Pointing to this court's decision in *Johnson v. Puget Mill Co.,* 28 Wash. 515, 68 P. 876 (1902), the Court of Appeals held that the vendor's repudiation or failure to perform must be established before the purchaser may recover restitution. *Kofmehl,* 167 Wn. App. at 692. That is, "[t]o demonstrate that Baseline's retention of the earnest money was unjust, [Kofmehl] must prove that Baseline was unwilling to perform its obligations under the Agreement. Establishing the meaning of the Agreement is an essential part of his proof." *Id.* at 695-96.

The Court of Appeals then determined that Kofmehl had not carried his burden. Pointing to the plain language of Kofmehl's offer and the Agreement, the

testimony of the parties' brokers, and other evidence in the record, the Court of Appeals held that Kofmehl had not established as a matter of law that the Agreement envisioned the sale of the 3.93 acres, or that Baseline would actually construct a sewer line to the property. *Id.* at 696-97. Therefore, the Court of Appeals held that summary judgment in Kofmehl's favor was improper.

Finally, in the unpublished portion of its opinion, the Court of Appeals held that Baseline was not entitled to summary judgment either. Rejecting Baseline's claim that the term "accessibility of sewer" had a plain and ordinary meaning, the Court of Appeals held that it could not determine as a matter of law that Baseline had been ready, willing, and able to perform on the Agreement. *State v. Kofmehl*, No. 29683-1-III, slip op. (unpublished portion) at 25-26 (Wash. Ct. App. Apr. 12, 2012). The Court of Appeals reversed the trial court's grant of summary judgment, reversed the trial court's orders of restitution and attorney fees, and remanded for further proceedings.

Kofmehl timely filed a petition for review by this Court. We granted review. *Kofmehl v. Baseline Lake, LLC,* 175 Wn.2d 1005, 285 P.3d 885 (2012).

## ANALYSIS

I. Standard of Review

This court reviews a grant or denial of summary judgment de novo, and the appellate court performs the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). However, the appellate court may

consider only the evidence and issues called to the attention of the trial court. RAP 9.12.

A question of contract interpretation may be determined as a matter of law if it does not turn on the "credibility of extrinsic evidence or . . . a choice among reasonable inferences to be drawn from extrinsic evidence." *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 212 (1981)). If interpretation of the contract depends on either, then the contract must be interpreted by a trier of fact. *Id.*

Summary judgment is proper only if there is no genuine issue of material fact. CR 56(c). A party moving for summary judgment bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). In addition, we construe the facts and draw all factual inferences in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Therefore, in reviewing the trial court's grant of summary judgment to Kofmehl, we construe the facts in Baseline's favor. However, in reviewing the Court of Appeals' denial of summary judgment to Baseline, we construe the facts in Kofmehl's favor.

II. Kofmehl Cannot Recover if Baseline Was Ready, Willing, and Able To Perform on the Agreement

Established Washington case law does not provide restitution to a buyer under a sale contract within the statute of frauds unless the seller has repudiated the contract. In *Schweiter*, the parties entered into an earnest-money land sale agreement that did not contain a legal description of the land, although a

10

sufficient legal description was later circulated to the parties. 57 Wn.2d at 708. The buyer refused the seller's tender of performance and attempted to rescind the contract. We held that if the seller has performed "as far as he could by his own acts," whereas the buyer had "voluntarily and causelessly refused to proceed," then the buyer has no equitable claim to his earnest money; he may not benefit from his own breach. *Id.* at 712. Therefore, we reaffirmed common law principles we had earlier explored in *Dubke*:

> The applicable rule is that a vendee under an agreement for the sale and purchase of property which does not satisfy the statute of frauds, cannot recover payments made upon the purchase price if the vendor has not repudiated the contract but is ready, willing, and able to perform in accordance therewith, even though the contract is not enforcible against the vendee either at law or in equity.

29 Wn.2d at 487.

Kofmehl raises two arguments against application of the *Schweiter* rule here. First, Kofmehl argues that the Agreement was void under the statute of frauds and proving that Baseline repudiated the Agreement would improperly reform the contract and defeat the purpose of the statute of frauds. This theory disregards the common law principle that a contract made unenforceable by the statute of frauds is still admissible in evidence for any purpose other than enforcement. RESTATEMENT (SECOND) OF CONTRACTS § 143; *see Costco Wholesale Corp. v. World Wide Licensing Corp.*, 78 Wn. App. 637, 648, 898 P.2d 347 (1995). We would not be reforming or enforcing the Agreement in violation of the statute of frauds; we look to the Agreement to establish whether Baseline

repudiated or was ready, willing, and able to perform. This is a permissible use under the *Restatement (Second) of Contracts.*[2]

Second, Kofmehl points to the trial court's statements implying there was never any agreement in the first instance. Whether or not the parties reached an enforceable agreement initially, as in *Schweiter,* the parties received an extrinsic description of the land prior to closing. This description may not be enough to make the Agreement enforceable, but it suffices to determine whether or not Baseline was ready, willing, and able to perform. As in *Schweiter,* then, our role is to consider whether Baseline repudiated the Agreement.

We hold that the Court of Appeals correctly held that the *Schweiter* rule applies here: restitution will not be available if Baseline did not repudiate the Agreement but remained ready, willing, and able to perform.[3] 57 Wn.2d at 711.

III. Kofmehl Bore the Burden of Proving that Baseline Was Not Ready, Willing, and Able to Perform

Kofmehl argues that even if *Schweiter* applies, it is not his burden to prove that Baseline repudiated or that Baseline was not ready, willing, or able to perform. In the past, this court has required a purchaser to prove the vendor's breach when attempting to recover earnest money on a land sale contract.

---

[2] *See also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 31 cmt. f (2011) (an agreement that is unenforceable under the statute of frauds may nevertheless be evidence establishing unjust enrichment for the purposes of calculating the proper amount of restitution).

[3] This is not a two-part test; one who repudiates a contract is necessarily not "ready, willing, and able to perform." *See* BLACK'S LAW DICTIONARY 1418 (9th ed. 2009) (defining "repudiate" as "[t]o reject or renounce (a duty or obligation); esp., to indicate an intention not to perform (a contract)").

*Soules v. Cox,* 53 Wn.2d 598, 600, 335 P.2d 476 (1959). In *Soules,* we held that even assuming the purchaser's reading of the contract was correct, the purchaser had failed to prove that the vendor breached the agreement. Such proof, we held, was "essential to entitle appellant to rescind the earnest-money agreement." *Id.* at 601.

Although the contract in *Soules* did not fall within the statute of frauds, the *Schweiter* test involves essentially the same inquiry. *Schweiter* held that the buyer cannot recover restitution if the vendor has not repudiated the contract; this means that as in *Soules,* it is necessary to establish the vendor's repudiation before restitution will be available. Kofmehl has not provided a reason why we should allocate the burden of proof differently than we did in *Soules.* Rather, whenever a contract is invalidated by force of statute, the restitution analysis must be keyed to the policy goals of that statute. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 32 (2011). In Washington, the policy goal of the statute of frauds is to protect the vendor—that is, Baseline. *Home Realty Lynnwood, Inc. v. Walsh,* 146 Wn. App. 231, 240, 189 P.3d 253 (2008) (quoting 73 AM. JUR. 2D *Statute of Frauds* § 450 (2001)). In keeping with that policy, we require Kofmehl to show something more than unenforceability of the Agreement under the statute of frauds if he is to gain restitution.

Placing the burden of proof on Kofmehl would also be consistent with practice in other jurisdictions. California, for example, demands "pleading or proof that the [sellers] have on their part violated any of the terms of said agreement,"

*Walbridge v. Richards*, 212 Cal. 408, 413, 298 P. 971 (1931), as well as a showing that the buyer actually performed (that is, tendered the balance of the purchase price), *Laffey v. Kaufman,* 134 Cal. 391, 393, 66 P. 471 (1901). Minnesota has adopted a similar rule—if buyers fail to plead on the face of the complaint that they tendered performance, there is no cause of action and the complaint should be dismissed. *Sennett v. Shehan*, 27 Minn. 328, 330, 7 N.W. 266 (1880). The rationale of this rule is that a buyer voluntarily pays earnest money as consideration for the agreement to convey the land. *Laffey,* 134 Cal. at 393. So long as the contract is not unlawful or against public policy, and the seller is not at fault, the buyer has received what he paid for. *Id.* Similarly, here Kofmehl paid the earnest money as consideration supporting the Agreement. On the force of that Agreement, Baseline removed the property from the market and rejected a competing offer to purchase the property for $1.625 million. The Agreement was not unlawful or against public policy. Therefore, to get back his earnest money, Kofmehl must show that he did not receive what he paid for, that is, the *promise* to sell him the land.

IV. There Is a Genuine Issue of Material Fact as to whether Kofmehl Is Entitled to Restitution

Kofmehl must show that Baseline was not ready, willing, and able to perform on the Agreement. He does not contest that Baseline was ready, willing, and able to perform on the Agreement *as Baseline saw it.* But to prevail on summary judgment, Kofmehl must prove that *his* interpretation of the Agreement is correct. He has failed to do so. Rather, construing the facts in the light most

favorable to Baseline—as we must do on appeal of a summary judgment against Baseline—leads to the conclusion that Kofmehl, not Baseline, breached the Agreement.

*A finder of fact could find that Baseline tendered the property contemplated by the Agreement*

1. The Agreement provided for the sale of 30.12 acres, which is what Baseline tendered

Kofmehl's main complaint with the closing documents was that the legal description was based on the short plat filed after the parties entered into the purchase and sale agreement, in contrast to the legal description contained in the Agreement. Kofmehl relies on *Park v. McCoy,* 121 Wash. 189, 192, 208 P. 1098 (1922), where we held that the buyer could rescind an earnest-money contract that contained a different legal description of the property than the prior earnest-money receipt. We held that the buyer "had a right to rely upon the description given in the earnest-money receipt . . ." and that the seller's failure to tender the property described in that receipt entitled the buyer to rescission and restitution. *Id.*

Kofmehl interprets *Park* to mean that whenever the legal description in a seller's tender differs from an earlier promised legal description, the buyer is automatically entitled to rescission and restitution. But in *Park,* we relied on the fact that the land actually tendered by the contract was a *lesser amount* than the buyer had been promised in the earnest-money receipt. *Id.* The record does not clearly establish that this is the case here. Drawing all inferences in Baseline's

favor, Kofmehl's theory that the Agreement promised him the additional 3.93 acres founders upon the plain language of the Agreement. Both the offer and the Agreement provided for "30.12 acres" to be conveyed. This is the size of the "Lot 1" that Baseline offered to convey and that Kofmehl saw on Baseline's preliminary map prior to signing the Agreement. Nothing on the face of the Agreement suggests any intention to buy or sell 34 acres.

Kofmehl also argued to the trial court that he took the language "all included inside FU 182, Block 73 to mean that he was purchasing the entirety of Block 73. Baseline, on the other hand, understood the language to mean that all 30.12 acres were contained inside FU 182, Block 73. Baseline's reading of the Agreement is consistent with the original listing, which listed FU 182, Block 73 in the section "Farm Property Informative Data" under "How to get there." In other words, Baseline meant "Approximately 30.12 acres" as the actual description of the land and "All included inside of FU 182, Block 73" as an explanatory phrase. This may reflect sloppy draftsmanship, but it does not require a finder of fact to find that Baseline meant to sell the entirety of Block 73. Rather, if the Agreement had been intended to sell all of Block 73, it would not have described the property to be sold as 30.12 acres. Block 73 is 43 acres in area, not 30.12.

In the summary judgment proceedings, Kofmehl also relied on his addition of $150,000 to the purchase price in his second offer, and the removal of the language specifically excluding the 3.93 acres, between his initial offer and the final Agreement. He suggests that between the offer and the Agreement, he

negotiated for the purchase of the 3.93 acres for $150,000. But it makes little sense for Baseline to sell 3.93 acres for $150,000 (approximately $38,000 per acre) when it had previously rejected Baseline's offer to purchase 30 acres for $1.5 million ($50,000 per acre).

Reading the facts in the light most favorable to Baseline, the Agreement—whatever its other flaws—clearly indicated that Kofmehl was to purchase 30.12 acres, and Kofmehl could not complain when the closing documents tendered the only combination of parcels that exactly totaled 30.12 acres.

2. The record does not clearly establish that Baseline failed to ensure the "accessibility of sewer"

Kofmehl complains that at the time of closing, Baseline had not complied with the term "accessibility of sewer" in the Agreement. The word "accessibility" does not have a plain and ordinary meaning. However, the dictionary defines it as "the quality or state of being [capable of being reached or easily approached]." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (2002).

According to the city of Quincy, there were "easements in place to provide for sewer to the subject property." CP at 335. The sewer was legally capable of being reached through these easements. Kofmehl did not outright deny the existence of these easements but only complained that they were "not new, fresh and recorded and exact." CP at 155.

Reading the facts in the light most favorable to Baseline, we must credit the city's assertion that the easements existed and allowed for access to the sewer—notwithstanding Kofmehl's misgivings. In addition, Kofmehl discussed

17

with his broker his plans for constructing the sewer line himself. This belies his assertion that he meant the Agreement to require Baseline to construct the sewer. Kofmehl has not foreclosed all genuine issues of material fact regarding Baseline's compliance with the sewer provision.

Reading the facts in the light most favorable to Baseline, Kofmehl had no cause to refuse to sign the closing documents, and his refusal constituted a breach of the Agreement. There are genuine issues of material fact as to Kofmehl's right to restitution, and the Court of Appeals correctly reversed the trial court's grant of summary judgment in his favor.

In order to prevail on remand, Kofmehl must satisfy the *Schweiter* test by proving both the validity of his interpretation of the Agreement and that Baseline repudiated that Agreement, or else revive and prevail on his alternative arguments that there was no meeting of the minds or that there was a mutual mistake of fact.

V.  Baseline Is Not Entitled to Summary Judgment Granting Specific Performance of the Agreement

We now turn to Baseline's request for summary judgment. The Court of Appeals affirmed the trial court's denial of summary judgment for Baseline, holding that "Baseline's evidence, while substantial, does not clearly establish the absence of any genuine issue of material fact." *Kofmehl,* slip op. (unpublished portion) at 26. The Court of Appeals was correct. Drawing all factual inferences in Kofmehl's favor, Baseline has not established beyond dispute that Kofmehl was in breach.

As we discussed above, the evidence points strongly to Baseline's reading of the Agreement to cover only 30.12 acres of land—but the evidence is not so strong as to foreclose all other interpretations. For instance, the $150,000 increase in the purchase price between Kofmehl's initial offer and the final Agreement might be explained by the addition of more land to the Agreement— although as discussed previously, four acres at $150,000 is significantly cheaper than the $50,000 per acre rate previously offered by Kofmehl and rejected by Baseline. In addition, Kofmehl's contemporaneous profit projections contemplated a "net usable" area of 34.3 acres. CP at 378. While Kofmehl's interpretation of the Agreement to encompass the 3.93 acres is unlikely, it is not impossible on the record before us. A finder of fact must determine the credibility of the competing evidence presented by Kofmehl and Baseline. *See Berg*, 115 Wn.2d at 668.

As for the sewer, Baseline argues that the term of the Agreement concerning "Accessibility of city sewer," CP at 75, has a plain and ordinary meaning that can be construed as a matter of law. In support of this assertion, Baseline points to our holding in *Goedecke v. Viking Inv. Corp.*, 70 Wn.2d 504, 424 P.2d 307 (1967). There, this court considered whether a contract term providing "'that public sewers are available to property'" had been fulfilled. *Id.* at 505. We held that it had, through a public road running from the property to a sewer facility. *Id.* at 506. But in that case, we did not interpret the term "availability." Rather, the parties conceded that the presence of the road would

satisfy the availability condition and disputed whether the road actually existed. As the Court of Appeals correctly held, we did not hold in *Goedecke* that an easement to the sewer *always* makes sewer "available" or "accessible" to a property. More fact-finding is necessary to determine the objective intent of the parties in stipulating for the "accessibility" of the sewer.

## VI. Attorney Fees

The Agreement provides that "[i]f Purchaser, Seller, or any Agent or Broker included in this transaction is involved in any dispute relating to any aspect of this transaction or this Agreement, any prevailing party shall recover their reasonable attorneys' fees and costs." CP at 77. Because there are still genuine issues of material fact, neither party has prevailed yet and we decline to award attorney fees. *See Schroeder v. Excelsior Mgmt. Grp., LLC,* 177 Wn.2d 94, 115 n.15, 297 P.3d 677 (2013). The parties may renew their motions for attorney fees upon remand.

## CONCLUSION

The record leaves genuine issues of material fact as to the meaning of the Agreement and to which party breached the Agreement. Thus, neither party is entitled to summary judgment on this record. We affirm the Court of Appeals and remand this case for further proceedings consistent with this opinion.

No. 87395-0

_Wiggins, J._

WE CONCUR.

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Fairhurst, J._

_Madsen, J._

_Stephens, J._

_González, J._

_Gordon McCloud, J._

21