# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| KIMBERLY G. LUVAAS, | No.  46656-2-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR & INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, C.J.  —  Kimberly G. Luvaas appeals the superior court's order denying her motion for summary judgment and granting summary judgment in favor of the Department of Labor and Industries (L&I) on her workmen's compensation claim.  She argues that the court erred in not finding that she was an employee of the Department of Social and Health Services (DSHS) on the date of her industrial injury and in failing to include her wages from DSHS in her wage calculation.  We hold that (1) under RCW 51.08.178(1)'s plain language, Luvaas's DSHS wages could be considered only if she was employed by DSHS at the time of her injury, and (2) there is no question of fact that Luvaas was not employed by DSHS at the time of her injury.  Accordingly, we affirm the superior court.

FACTS

I.  DSHS CONTRACT AND LUVAAS'S TERMINATION NOTICE

On June 25, 2009, Luvaas signed a contract with DSHS to provide client services from July 1, 2009 through June 30, 2012.  The contract included the following termination clause:

> **Termination for Convenience**. DSHS may terminate this Contract in whole or in part when it is in the best interest of DSHS by giving the Contractor at least thirty (30) calendar days' written notice. The Contractor may terminate this Contract for convenience by giving DSHS at least thirty (30) calendar days' written notice addressed to DSHS at the address listed on page 1 of this Contract.

Administrative Record (AR) Ex. 2 at 8.

According to Luvaas, sometime in June 2011, she informed someone[1] at DSHS that she was going to stop providing client services. But when DSHS was unable to find a replacement, Luvaas "verbally agreed that [she] would stay on another month" to give DSHS time to find someone. AR Report of Proceedings (May 29, 2013) at 42. In a subsequent letter dated July 5, Luvaas informed DSHS that she would not provide any client services after July 28. DSHS received this notice on July 8. As of July 28, Luvaas had worked all of her allotted hours, and she provided no client services after that date.

## II. INJURY, CLAIM, AND INITIAL NOTICE OF DECISION

On July 29, Luvaas injured herself while working for a landscaping company. Luvaas filed for workmen's compensation benefits based on the July 29, 2011 injury. In a claim form, Luvaas stated that as of July 28, 2011,[2] she had two jobs, but she also stated that "7-28-11 was [her] last day for [DSHS]." AR at 26. She also submitted a copy of her invoice to DSHS showing that she had provided 178 hours of service from July 1 through July 31, 2011. An electronic funds transfer remittance "advice" also noted that the pay period for her final DSHS check was from July 1 to July 31.

---

[1] Luvaas was not sure who she spoke to or whether the notice was oral or in writing, but she testified that she had provided some kind of notice in June.

[2] In her original claim, Luvaas asserted that the injury occurred on July 28, but she later corrected that date to show that the injury occurred on July 29.

On May 4, 2012, L&I issued a notice of decision setting the wages for the job injury at a monthly salary of $447.12; this rate included the wages from only Luvaas's landscaping job. Luvaas protested the May 4 wage order, but L&I affirmed the order.

### III. APPEAL TO THE BOARD OF INDUSTRIAL INSURANCE APPEALS

Luvaas then appealed the May 4 wage order to the Board of Industrial Insurance Appeals. She argued, inter alia, that L&I had erred when it failed to consider her monthly DSHS wages.

After denying the parties' motions for summary judgment, an industrial appeals judge (IAJ) held a full hearing on the appeal. In addition to Luvaas's testimony, the IAJ considered testimony from DSHS employee Rodney Gilliand and L&I claims consultant supervisor Angel Travis.

Luvaas asserted that she was employed by both the landscaping company and DSHS at the time of her July 29, 2011 injury, and she testified consistently with the facts set out above. But she admitted that she did not provide or intend to provide any client services for DSHS after July 28, 2011.

The IAJ issued a proposed decision and order affirming the May 4, 2012 wage order. The IAJ concluded, in relevant part, that Luvaas's work with the landscaping company was her "sole employment at the time of [her] injury" because she had terminated her contract with DSHS, completed her billable hours for DSHS, and did not intend to return to work for DSHS before the date of her injury. AR at 19. The proposed decision and order became a final order when the Board denied Luvaas's petition for review.

### IV. APPEAL TO SUPERIOR COURT

Luvaas then appealed the final order to the superior court and moved for summary judgment, arguing, inter alia, that L&I should have considered her DSHS wages. L&I filed a cross

motion for summary judgment. Concluding that Luvaas's final date of employment with DSHS was July 28, 2011, the superior court denied Luvaas's summary judgment motion and granted L&I's motion, affirming the May 4, 2012 wage order. The superior court commented, "Since there were no lost wages or income from DSHS to replace after July 28, 2011, there would be no purpose to awarding time loss compensation based upon wages or income from DSHS during this time frame." Clerk's Papers at 10. Luvaas appealed to this court.

ANALYSIS

Luvaas argues that the superior court erred when it denied her summary judgment motion and granted L&I's summary judgment motion.[3] She asserts that she was still employed by DSHS at the time of her injury because (1) DSHS paid her for the entire month of July, (2) her employment contract with DSHS was still in effect on the date of her industrial injury because she did not give DSHS written notice of her intent to terminate the contract at least 30 days before the date of her injury, and (3) she worked until the last day of the month based on her regular schedule, which did not include Friday through Monday. Accordingly, she contends that her DSHS monthly wages should have been included in the wage calculation. We disagree.

I. STANDARD OF REVIEW AND STATUTORY INTERPRETATION

We review the superior court's decision on summary judgment in an industrial insurance appeal as we would in any other civil case.[4] *Hill v. Dep't of Labor & Indus.*, 161 Wn. App. 286,

---

[3] Luvaas contends that she is not claiming that there are any genuine issues of material fact that bar summary judgment. Instead, she argues she was entitled to summary judgment.

[4] On an appeal of a decision by the Board, the superior court considers the evidence and testimony presented to the Board. *See* RCW 51.52.115. We, in turn, review the superior court's decision based on that record.

292, 253 P.3d 430 (2011) (citing RCW 51.52.140); *Malang v. Dep't of Labor & Indus.*, 139 Wn. App. 677, 683, 162 P.3d 450 (2007). "Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Campos v. Dep't of Labor & Indus.*, 75 Wn. App. 379, 383, 880 P.2d 543 (1994) (citing CR 56(c); *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)). We consider all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party; we review all questions of law de novo. *Cowlitz Stud Co. v. Clevenger*, 157 Wn.2d 569, 573, 141 P.3d 1 (2006).

Statutory construction is a question of law that we review de novo. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001) (citing *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996)). Our primary goal when engaging in statutory construction is to carry out the legislature's intent. *Cockle*, 142 Wn.2d at 807 (citing *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). If a statute is plain and unambiguous, its meaning must be derived from the language itself. *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

## II. EMPLOYMENT STATUS AT TIME OF INJURY

"Under Washington's Industrial Insurance Act, Title 51 RCW . . ., time-loss and loss of earning power compensation rates are determined by reference to a worker's wage at the time of injury." *Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 481, 120 P.3d 564 (2005) (citing RCW 51.08.178; *Cockle*, 142 Wn.2d at 807). Because the purpose of time-loss compensation is to reflect

the worker's lost earning capacity, the time-loss compensation is based on the worker's "wages" as defined in RCW 51.08.178(1). This statute provides, in part,

> For the purposes of this title, the monthly wages the worker was receiving from all employment *at the time of injury* shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving *at the time of the injury* [by a number determined by the number of days the employee usually worked in a week].

RCW 51.08.178(1) (emphasis added).

Luvaas argues that the statute's requirement that L&I consider "'the monthly wages the worker was receiving from all employment,'" L&I was required to consider her DSHS wages earned in the month of her injury. Br. of Appellant at 6 (quoting RCW 51.08.178(1)). L&I argues that the plain language of the statute establishes that it could consider Luvaas's DSHS wages only if she was employed by DSHS at the time of injury.[5] We agree with L&I.

The statute's plain language requires L&I to consider the monthly wages that Luvaas was receiving "from all employment at the time of injury." If she was not employed by DSHS at the time of the injury, she was not receiving any wages from DSHS at that time.[6] RCW 51.08.178(1). Accordingly, we must next examine whether there was a question of fact as to whether Luvaas was employed by DSHS at the time of her injury.

---

[5] L&I also argues that *Department of Labor & Industries v. Avundes*, 140 Wn.2d 282, 996 P.2d 593 (2000), supports its argument that it could consider only the work Luvaas was engaged in on the date of the injury. *Avundes* is not instructive here because our Supreme Court's analysis was focused on whether RCW 51.08.178(1) or (2) applied, not whether L&I had to consider all monthly wages regardless of whether the claimant was actually employed by an employer on the date of the injury. 140 Wn.2d at 290.

[6] We note that because we base our decision on the plain language of the statute, there is no need for us to liberally construe the statute in Luvaas's favor.

### III. EMPLOYMENT STATUS

Luvaas argues that she was still employed under the DSHS contract on July 29, 2011, because her contract with DSHS required her to give at least 30 days written notice if she was terminating the contract and she was injured less than 30 days after she gave written notice. We disagree.

The evidence unequivocally established that Luvaas unilaterally terminated her employment relationship with DSHS after July 28, 2011—in fact, Luvaas herself testified that she did not provide or intend to provide any further services under the DSHS contract after that date. Furthermore, if Luvaas's unilateral termination of her employment amounted to a breach of contract, it does not mean Luvaas was still employed by DSHS because a party breaching a contract cannot demand performance from a nonbreaching party. *See Kofmehl v. Baseline Lake, LLC*, 177 Wn.2d 584, 595, 305 P.3d 230 (2013) (party breaching a sales contract cannot benefit from his own breach of that contract); *Parsons Supply, Inc. v. Smith*, 22 Wn. App. 520, 523, 591 P.2d 821 (1979) (acknowledging "general rule that a breaching party cannot demand performance from the nonbreaching party"). The fact Luvaas chose the July 28 date instead of July 31 because her regular work schedule would not have included July 29 through 31 does not alter the fact she

7

specifically stated she was terminating her employment on July 28. Thus, the superior court did not err when it found that Luvaas was not employed by DSHS on July 29.[7]

Because there is no question of fact that Luvaas terminated her DSHS employment the day before her injury and L&I could consider only the wages from employers for whom Luvaas was working as of the date of her injury, the superior court did not err when it granted DSHS summary judgment and affirmed the Board's decision.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.
_____
JOHANSON, C.J.

We concur:

Worswick J.
_____
WORSWICK, J.

Melnick J.
_____
MELNICK, J.

_____

[7] Luvaas also argues that any attempt on her part to alter the contract by stating she was ending her relationship with DSHS on July 28, 2011, rather than 30 days after the written notice, is irrelevant and, apparently, ineffectual, because the contract prohibits unilateral modification of the contract. And she asserts that DSHS's acquiescence to the July 28, 2011 termination date cannot be construed as waiving "a supposed 'breach' of the contract by Ms. Luvaas," because the contract specifies that only the DSHS chief administrative officer or designee had the authority to waive any term or condition of the contract. Br. of Appellant at 15. Because we hold that Luvaas unilaterally terminated her employment with DSHS as of July 28, we do not discuss whether this was a modification of the contract or whether DSHS had waived any contractual requirements.